**In re MOD–U–LANES, INC., Debtor.**

**Bankruptcy No. 83–1885.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 11, 1985.

Richard C. Prosser, Tampa, Fla., for debtor.

Thomas E. Baynes, Jr., Lake Wales, Fla., for Mod-U-Lanes, Inc.

James G. Brehm, Tampa, Fla., for Logan Lumber.

## ORDER ON MOTION FOR SUMMARY JUDGMENT UPON INVOLUNTARY PETITION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS an involuntary Chapter 7 case which was filed against MOD–U–LANES, INC. The original, petitioning creditors were Atlas Products, Inc. and Perry-Austen Mod-U-Lane Sales Company. The present matter under consideration is a Motion for Summary Judgment filed by Logan Lumber Company, an unsecured creditor, which filed its joinder in the involuntary petition pursuant to 11 U.S.C. § 303(c).

The undisputed facts which are relevant to the resolution of the controversy before this Court may be summarized as follows:

On September 12, 1983, Atlas Products, Inc. and Perry-Austen Mod-U-Lane Sales Company filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Mod-U-Lanes, Inc. Of course, the involuntary petition alleged that the Debtor was generally not paying its debts as they became due. On September 3, 1983 the Debtor filed a Motion to Dismiss or, in the Alternative, to Require Filing of a Bond pursuant to 11 U.S.C. § 303(e). Prior to a hearing on the Debtor's Motion to Dismiss, the original petitioning creditors also filed a Motion to Dismiss reciting that the differences between Mod-U-Lanes, Inc. and Atlas and Perry-Austen had been settled. In the interim period between the filing of the Motions to Dismiss by the Debtor and the original petitioning creditors, Logan Lumber Company filed its joinder in the involuntary petition pursuant to 11 U.S.C. § 303(c). At the hearings on the Motions to Dismiss, Logan Lumber Company resisted the entry of an order dismissing the case. In due course, the Debtor filed its answer to the involuntary petition and denied that the Debtor was generally not paying its debts as they became due.

On October 15, 1984, Logan Lumber Company filed the instant Motion for Summary Judgment alleging that there were no genuine issues of material fact and that Logan was entitled to the entry of an order for relief as a matter of law. In support of its Motion for Summary Judgment, Logan relies upon the pleadings filed in the general case and the deposition of Will Heddon, President of the Debtor corporation.

The deposition of Mr. Heddon, established that the Debtor, prior to the filing of the involuntary case, had paid approximately 98% of all of its debts and that only 2% remained unpaid. He also testified that, at the time of the filing of the petition, 97% or 98% of the *unpaid* creditors were involved in state court litigation with Mod-U-Lanes, Inc. Indeed, the record reflects that Logan and the Debtor were also involved in litigation in the state court.

Heddon's testimony also revealed that there are approximately ten (10) creditors remaining unpaid and the amount of unpaid debt, excluding Logan, totals approximately $23,215.10. Heddon further testified that either the amount or existence of the debts to the unpaid creditors were in dispute at the time of the filing of the involuntary case. With respect to the claim of Logan Lumber Company, Heddon's testimony reflected that approximately $21,000 was paid to Logan, as a result of the state court litigation between Logan and Mod-U-Lanes. However, Heddon testified that the Debtor stopped payment on the $21,000 check when a representative of Logan later claimed an additional $21,000 was due and owing.

The issue for this Court's determination is whether, at the time of the filing

of the involuntary petition, the Debtor was generally not paying its debts as they became due.

In determining whether a Debtor is generally not paying its debts as they become due, it is well to note that the Bankruptcy Code does not define the phrase, "generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h). Neither does the legislative history to § 303 of the Bankruptcy Code offer much guidance. It provides:

> "The equity insolvency test has been in equity jurisprudence for hundreds of years, and ... the Bankruptcy Court's should have no difficulty in applying it." 95th Cong., 1st Sess., H.R.Rep. No. 95–595, p. 323, U.S.Code Cong. & Admin. News 1978, p. 5787, 6280.

As Judge Friendly once stated, "unhappily the language 'the Debtor is generally not paying such debtor's debts as such debts become due' is woefully lacking in clarity." *In re B.D. International Discount Corporation,* 701 F.2d 1071 (2d Cir. 1983), at p. 1075. A determination of the issue is further complicated in the instant case because of the existence of disputed debts. In *Matter of Covey,* 650 F.2d 877 (7th Cir.1981), the Seventh Circuit held that a debt should be excluded for the purposes of determining whether the Debtor is generally not paying its debts as they become due only if:

> (1) the dispute is over the existence of the debt, not its amount;
>
> (2) the dispute can be examined without substantial litigation of law or fact; and,
>
> (c) the interest of the Debtor in avoiding bankruptcy outweighs the interest of the creditors. at p. 883.

Recently, the decision in *Covey* has been rejected by other courts for a variety of reasons. See *In re Dill,* 731 F.2d 629 (9th Cir.1984); *In re Central Hobron Associates,* 41 B.R. 444 (Bkrtcy.D.Hawaii 1984); *In re R.N. Salem Corporation,* 29 B.R. 424 (S.D.Ohio, W.D.1983). In *Dill,* the Court stated:

> "We do not adopt matter of Covey as the rule for making that determination where the claim is disputed as to liability. The Covey rule appears to lean too heavily toward favoring creditors, as opposed to Debtor's interest." at 632.

There, the 9th Circuit stated that the Bankruptcy Court should balance the interest of the creditors against those of the Debtor.

In *Salem,* supra, the District Court rejected the Covey test since it forced Debtors to pay disputed debts to avoid involuntary bankruptcy and would permit creditors to use the Bankruptcy Court as a collection device where debts are disputed. In that case, Judge Spiegel opined:

> "It seems fairly clear that the application of the *Covey* test will generally result in the inclusion of disputed debts. We find the result harsh, for we do not believe a debtor should have to pay legitimately disputed debts to avoid bankruptcy [citation omitted]. Furthermore, a rigid application of *Covey* may enable creditors to use the involuntary petition as a collection device where debts are disputed, a strategy which if widely employed would paralyze bankruptcy courts. Congress intended the Bankruptcy Court as a shield for Debtors, not a sword for creditors." 29 B.R. at 429.

Similarly, in *In re B.D. International Discount Corp.,* the Second Circuit rejected *Covey* saying "[w]e have difficulty in believing Congress intended that a Debtor should be found to be generally not paying its debts as they become due ... when the claim is subject to serious dispute." Based upon the foregoing, this Court concludes that the balancing of interest tests set forth in *Dill* should control and, therefore, rejects the Covey analysis.

In *Central Hobron Associates,* the Court discussed protection of the interests of creditors and stated:

> "Creditors interests are generally measured by whether the creditors can get adequate relief elsewhere ... If a creditor can go to state court to collect a debt, the Bankruptcy Court's have been ada-

mant in refusing relief." Citing *In re Nar-Jor Enterprises*, 6 B.R. 584, 586 (Bkrtcy.S.D.Fla.1981).

Considering that Logan and the other disputed creditors mentioned above may obtain adequate relief in the pending state court actions, together with the fact that only these disputed debts remain unpaid, this Court finds it is appropriate to exclude these disputed debts from the determination as to whether the Debtor is generally not paying its debts as they become due. This being the case, it is clear that the Motion for Summary Judgment filed by Logan should be denied. However, this does not mean that this case may not be resolved by summary judgment. Rather, it appears from the undisputed facts discussed above that a summary judgment should be granted in favor of the Debtor. Under Fed.R.Civ.P. 56, the Court upon motion by a party for summary judgment has the power to grant summary judgment against the movant and in favor of the non-moving party, even though the latter has not filed a cross-motion for summary judgment. *Procter & Gamble Independent Union v. Gamble Mfg. Co.*, 312 F.2d 181, 190 (2nd Cir.1962), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). Since the Court cannot find that the Debtor was generally not paying its debts as they became due, this case must be dismissed.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Summary Judgment filed by Logan Lumber Company, Inc. be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that there are no material issues of fact and that the Debtor is entitled to judgment as a matter of law. It is further

ORDERED, ADJUDGED AND DE-CREED that the above-captioned involuntary Chapter 7 case be, and the same hereby is, dismissed.